United States District Court
Southern District of Texas
**ENTERED**
December 11, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Matthew Gilbert, § § § *Plaintiff,* § § § v. § § Driven Brands Shared Services, § LLC, § § § *Defendant.* § | Case No. 4:23-cv-01747 |

## MEMORANDUM AND RECOMMENDATION

In this wrongful discharge suit, Defendant Driven Brands Shared Services, LLC filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims brought by Plaintiff Matthew Gilbert. Dkt. 5. Gilbert responded to the motion, Dkt. 7, and Driven Brands filed a reply, Dkt. 10. The case was then referred to the undersigned judge. Dkt. 15. After carefully considering the parties' briefs, Gilbert's live pleading, and the applicable law, it is recommended that Driven Brands's motion to dismiss (Dkt. 5) be granted in part and denied in part.

## Background

This suit alleges that Driven Brands terminated Gilbert in retaliation for submitting a complaint. The following allegations are stated in Gilbert's live pleading, and the Court takes them as true at this stage.

Driven Brands hired Gilbert as a construction manager in September of 2020. Dkt 1-1 at 5; Dkt. 5 at 2. During his employment, Gilbert was promoted multiple times, received numerous raises and bonuses, as well as awards and recognition from his superiors. Dkt. 1-1 at 5-6. In Gilbert's last role as vice president of construction, to which he had been promoted in January 2023, he reported to Jorge Planta, vice president of real estate. *Id.* at 6.

Planta approved Gilbert's request to take paid time off to go skiing with his family from Friday, March 10, 2023 through Monday, March 13, 2023. *Id.* at 7. While Gilbert was out of town, Planta allegedly "unprofessionally and unethically interrupted Gilbert's team members with incessant demands" for work, to the point that they complained to Gilbert. *Id.* One team member quit, largely attributing his decision to Planta's brash approach and aggressive disposition. *Id.* (describing Plant as a "wrecking ball" and "irrational"); *see also id.* at 45 (PX-D). In addition, Planta repeatedly called Gilbert, questioning his whereabouts, despite knowing Gilbert was on a vacation that Planta himself had approved. Dkt. 1-1 at 7.

Upon returning Monday evening, Gilbert reported Planta to Dennis Elliott, Planta's manager, sending him evidence of Planta's allegedly "unprofessional and unethical conduct," including complaints from middle managers about Planta's explosive personality and communications regarding Planta's award of a bid to an unlicensed contractor. *Id.* at 8. Elliott told Gilbert

2

he would address these issues with Planta. *Id*. The next day, Planta sent Gilbert a negative quarterly review, allegedly in retaliation for reporting Planta to Elliott. *Id*. at 8-9.

Gilbert then drafted an email to Driven Brands's human resources department regarding Planta's behavior. *Id*. at 9. Gilbert shared drafts of the email with Elliott on March 14 and 15, 2023 before sending them to HR. *Id*. At no time did Elliott comment on the contents of the email, instruct Gilbert to alter the email, or refrain from sending it. *Id*. Rather, Elliott sent Gilbert a text message on March 16, 2023, telling Gilbert "I can't tell you yes or no on sending that to HR. You have to do what you feel is right. Same thing on the wording, it's your perspective and I don't want to influence you in any way." *Id*. Elliott had previously encouraged Gilbert via email to "feel free to raise the flag when things feel wrong." *Id*. at 7-8.

Gilbert had recently taken a "mandatory online HR training video" that directed Driven Brands employees to report "any unprofessional or unethical behaviors witnessed in the workplace to upper management or HR," assuring that employees would not be terminated for doing so. *Id*. at 6. More importantly, Driven Brands's Code of Conduct (the "Code") encourages Driven Brands employees "promptly to report evidence of illegal or unethical behavior, or any potential or actual misconduct or violation of th[e] Code." *Id*. at 33. In

relevant part, the Code stated explicitly that Drive Brands would not take adverse action against any employee who complains of wrongdoing:

> *No Retaliation for Submitting Complaints*, Providing Information or Participating in Investigation. *Neither the Company nor any of its personnel may discharge*, demote, suspend, threaten, harass or in any manner discriminate against any employee who … (c) submits a complaint pursuant to this Code regarding any conduct encouraged to be reported under this Code which the employee reasonably believes has occurred even if after investigation the Company determines that there has not been a violation.

Dkt. 1-1 at 34-35 (PX-A) (hereinafter "Section XVIII.4") (emphasis added).

In reliance upon the Code, his recent training, and Elliott's statements, Gilbert sent the email to HR that Thursday, detailing various instances of what he believed to be Planta's "unprofessional and unethical conduct," including the negative quarterly review Gilbert claimed to be retaliatory. *Id.* at 9-11. Gilbert also submitted a written report to Driven Brands's third-party compliance provider containing the same information. *Id.* at 10.

The very next day, March 17, 2023, Gilbert was terminated by Planta on a video conference call with Driven Brands's vice president of human resources. *Id.* at 12. Planta allegedly explained that Gilbert was terminated for "unprofessional behavior, communication, and insubordination." Gilbert asserts he had never been disciplined formally or informally. *Id.* To the contrary, he had been promoted just two months ago, and Planta had complimented Gilbert's professionalism just days before at a company meeting.

4

*Id.* at 6. Gilbert disputed Planta's explanation, expressing his belief that his termination was "100% retaliation" for the complaints he had submitted to HR and the report he had filed with the third-party compliance provider. *Id.* at 13.

Gilbert filed this suit in state court, alleging claims for breach of contract, promissory estoppel, common law fraud, and fraudulent inducement. *Id.* at 14-20. Driven Brands removed the suit to this Court based on diversity jurisdiction, 28 U.S.C. § 1332. Dkt. 1.

Driven Brands then filed the pending motion to dismiss, contending that Gilbert's claims fail as a matter of law because Driven Brands had not made any promises or representations to change the at-will nature of Gilbert's employment. Dkt. 5. Gilbert responded, Dkt. 7, and Driven Brands filed a reply, Dkt. 10. The motion is ripe for resolution.

## **Legal Standard**

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

5

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favor to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (internal quotation marks omitted).

## Analysis

Driven Brands argues that Gilbert has not identified an express agreement that overcomes the legal presumption that he is an at-will employee, which precludes all of Gilbert's claims. Dkt. 5 at 1. According to Driven Brands, any assurances in its Code of Conduct are too general to alter Gilbert's at-will status. Dkt. 5 at 4-8. Gilbert disagrees, arguing that the Code spells out a specific situation in which Drive Brands would not fire an employee—namely, that it would not discharge an employee for submitting a complaint. Dkt. 7 at 14-15. As Gilbert notes, the Code lacks a disclaimer warning that the Code is not contractually binding. *Id.* at 16.

6

The Court agrees with Gilbert that the Code's language creates an enforceable agreement that alters Gilbert's at-will employment status. For that reason, Gilbert has plausibly asserted breach of contract and promissory estoppel claims. Even so, the Court agrees with Driven Brands that Gilbert has not pleaded sufficient facts to support his claims for fraud and fraudulent inducement. The fraud-based claims should be dismissed.

## I. Gilbert has adequately alleged claims for breach of contract and promissory estoppel.

### A. In Texas, an employee must show the employer's unequivocal intent to alter his at-will employment status.

The parties agree that Texas law governs this dispute. In Texas, employment is at-will "absent a specific agreement to the contrary, [and such] employment may be terminated by the employer or the employee … for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). "[T]o overcome the presumption of employment at-will[,] … the employer must 'unequivocally indicate a definite intent … to be bound not to terminate the employee except under clearly specified circumstances.'" *Midland Jud. Dist. Cmty. Supervision & Corr. Dep't v. Jones*, 92 S.W.3d 486, 487 (Tex. 2002) (quoting *Brown*, 965 S.W.2d at 502). "[A]n agreement to modify the employment at-will relationship must be (1) expressed rather than implied, and (2) clear and specific." *Miksch v. Exxon Corp.*, 979 S.W.2d 700, 703 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

7

"A handbook or manual may modify the at-will relationship if it specifically and expressly curtails the employer's right to terminate the employee." *McDonald v. City of Corinth, Tex.*, 102 F.3d 152 (5th Cir. 1996) (citing *McAlister v. Medina Elec. Co-op., Inc.*, 830 S.W.2d 659, 664 (Tex. App.—San Antonio 1992, writ denied)). But "[a] disclaimer in an employee handbook … negates any implication that a [handbook] places a restriction on the employment-at-will relationship." *Fed. Exp. Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993) (per curiam).

### A. Gilbert has stated a plausible breach of contract claim.

Driven Brands asserts that Gilbert has not pleaded sufficient facts to show that the parties had a contract restricting Driven Brands's right to terminate his employment. Dkt. 5 at 4. Driven Brands also contends that Gilbert failed to allege the requisite consideration to establish an employment contract beyond his at-will employment. Dkt. 5. at 7-8. Gilbert responds that Section XVIII.4 of the Code clearly and explicitly forbids Driven Brands from terminating employees for submitting complaints. Dkt. 7 at 15. Gilbert further argues that his reliance upon the Code constitutes consideration that renders enforceable Driven Brands's promise of non-retaliation for reporting misconduct. Dkt. 7 at 16. The Court addresses these contentions in turn.

To prevail on a claim for breach of contract, the plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance

8

by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). Driven Brands challenges only the first element: whether the parties had a valid contract.

    1.    <u>Section XVIII.4 of the Code altered Gilbert's at-will employment status.</u>

Assurances of non-retaliation in employee manuals can constitute a binding agreement that specifically modifies an employee's at-will status. Although not cited by either party, the decision in *Vida v. El Paso Employees' Fed. Credit Union*, 885 S.W.2d 177 (Tex. App.—El Paso 1994, no writ), is particularly instructive.

In *Vida*, the court held that strikingly similar language in a personnel manual altered the defendant company's at-will relationship with an employee who was terminated after filing a grievance. *Id.* at 179, 181. There, the manual contained a specific assurance that "[n]o employee shall be penalized for using the grievance procedure." *Id.* at 179. The court found that "this provision limit[ed] the employer's termination rights in a narrow, clearly delineated way." *Id.* at 181. As a result, "the assurance in th[e] employee handbook [met] the test of a specific, express limitation that alters the at-will

9

relationship in a meaningful way." *Id.* Based on that conclusion, the *Vida* court reversed the grant of summary judgment to the company on the employee's breach of contract claim. *See id.* at 181-82.

Like the non-retaliation provision in *Vida*, Section XVIII.4 of Driven Brands's Code of Conduct makes "a specific pledge that [Driven Brands] would not terminate (or otherwise retaliate against) an employee for a single, particular reason." *Id.* at 181. In this way, the provision "directly limit[s] in a meaningful and special way the employer's right to terminate the employee at-will." *See Smith v. SCI Mgmt. Corp.*, 29 S.W.3d 264, 267 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (internal quotation marks omitted); *see also Vida*, 885 S.W.2d at 181 ("The handbook … contain[s] a specific contractual term altering at-will status."). Section XVIII.4 extends beyond "[g]eneral comments that an employee will not be discharged as long as his work is satisfactory" or "statements that an employee will be discharged only for 'good reason' or 'good cause' …." *See Brown*, 965 S.W.2d at 502. Instead, it specifically provides that "[n]either the Company nor any of its personnel may discharge … any employee who … submits a complaint pursuant to this Code regarding any conduct encouraged to be reported under this Code which the employee reasonably believes has occurred …." Dkt. 1-1 at 35.

Driven Brands's promise is "definite enough to constitute an enforceable contract" because it "does not contain ambiguous terminology or require one to

10

speculate as to the parameters of the parties' purported agreement." *See Miksch*, 979 S.W.2d at 705. It is "based on a clear set of standards"—that Gilbert would not be retaliated against for submitting complaints. *See El Expreso, Inc. v. Zendejas*, 193 S.W.3d 590, 595 (Tex. App.—Houston [1st Dist.] 2006, no pet.). And the absence of any disclaimer that the Code does not create contractual rights undercuts Driven Brands's position. *See Dutschmann*, 846 S.W.2d at 283 (addressing impact of disclaimer); *see also Studer v. Moore*, 2021 WL 629922, at *2 (Tex. App.—Houston [14th Dist.] Feb. 18, 2021, no pet.) (disclaimer in a code of conduct "negate[d] any implication" that its anti-retaliation provision altered the at-will relationship).

The foregoing reasoning comports with other decisions concluding that oral assurances of non-retaliation—where sufficiently specific—can modify at-will employment. *See, e.g.*, *Miksch*, 979 S.W.2d at 705 (reversing grant of summary judgment to employer where supervisor assured plaintiff that her husband's decision to open a competing business would not lead to her termination, despite the company's conflict of interest policy); *El Expreso*, 193 S.W.3d at 595 (employer's assurance that employee would not be terminated for attempting to comply with federal and state safety laws altered employee's at-will status). The fact that the assurances were made orally is a distinction without a difference. *See* Dkt. 5 at 6-7; Dkt. 7 at 16. Nothing limits the holdings in *Miksch* or *El Expreso* to oral statements.

11

Significantly, the Texas Supreme Court's decision in *Brown* did not distinguish between a written or oral employment contract. 965 S.W.2d at 502 ("[T]o make a binding contract of employment ... the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances."). The majority in *Brown*—unlike the concurring opinion—*expanded* the doctrine by allowing oral assurances to modify at-will employment status. *Compare id.* (oral statements with "a definite, stated intention" could modify an employee's at-will status), *with id.* at 506 (Gonzalez, J., concurring) (reaching alternative conclusion that Statute of Frauds precludes oral agreements to modify at-will status); *see also, e.g.*, *Miksch*, 979 S.W.2d at 704 (rejecting defendant's argument "that any agreement to modify the employment at-will relationship must be in writing").

If anything, written agreements ought to be more readily enforceable. They "provide greater certainty regarding what the terms of the transaction are and that those terms will be binding, thereby lessening the potential for error, misfortune, and dispute." *See DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The explicit language in Section XVIII.4 of the Code rebuts the presumption of at-will employment.

12

> 2. Gilbert's reliance on the non-retaliation promise provides the requisite consideration for enforcing the parties' agreement.

Driven Brands also contends that Gilbert cannot show he provided consideration in exchange for any non-retaliation promise. *See* Dkt. 5 at 7-8. "At-will employment does not preclude employers and employees from forming subsequent contracts, so long as neither party relies on continued employment as consideration for the contract." *Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 400 (Tex. 2014) (citation omitted). But Gilbert does not rely on the mere continuation of his employment as consideration. Rather, he expressly alleges that he relied on Driven Brands's non-retaliation promise when reporting his supervisor's misconduct—and was terminated as a result. *See* Dkt. 1-1 at 3. This is enough to show he provided consideration at this stage. *See, e.g.*, *El Expreso*, 193 S.W.3d at 597 (consideration existed where plaintiff went beyond assigned duties to ensure compliance with safety laws).

In sum, Gilbert has adequately alleged the existence of a valid employment agreement that promised he would not be fired for reporting misconduct. Accordingly, Driven Brands's motion to dismiss the breach-of-contract claim should be denied.

### B. Gilbert sufficiently pleaded his alternative promissory estoppel claim.

Driven Brands reprises the same contentions when addressing Gilbert's promissory estoppel claim. Like its arguments above, Driven Brands argues that the Code does not constitute a specific promise to Gilbert, thereby negating the first element of a claim for promissory estoppel. Dkt. 5 at 12. Gilbert counters that his complaint asserts Driven Brands unequivocally promised in writing not to "discharge, or [in] any other manner[,] discriminate against him for reporting what he reasonably believed to be unprofessional or unethical conduct." Dkt. 7 at 17. Gilbert argues that he foreseeably and substantially relied on that non-retaliation promise and then was fired for submitting a complaint. *See id.* The Court concludes that Gilbert has adequately pleaded a promissory estoppel claim.

Promissory estoppel requires "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). "Promissory estoppel generally is a defensive doctrine in that it estops a promisor from denying the enforceability of the promise." *Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997) (citing *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965)). "It is no answer that the parties' … contract was for an employment-at-will[] where the employer foreseeably and

14

intentionally induces the ... employee to materially change his position to his expense and detriment, and then repudiates its obligations." *Roberts v. Geosource Drilling Servs., Inc.*, 757 S.W.2d 48, 50 (Tex. App.—Houston [1st Dist.] 1988, no writ).

Taking Gilbert's factual allegations as true, Driven Brands can "be held to its assurance that no retaliation would result from [filing complaints]." *See Vida*, 885 S.W.2d at 181 (fact issue precluded summary judgment on plaintiff's alternative theory of promissory estoppel). Gilbert's employment with Driven Brands obligated him to follow the Code of Conduct. *See* Dkt. 1-1 at 24 ("[W]e expect you to ... comply with its provisions and to seek guidance if you have questions about its provisions or compliance requirements."). Driven Brands "encourage[d] [Gilbert] promptly to report evidence of illegal or unethical behavior, or any potential or actual misconduct or violation of this Code." *Id.* at 33. And Section XVIII.4 promised that Driven Brands would not discharge Gilbert for reporting any such misconduct—even if the company later determined that no wrongdoing occurred. *See id.* at 34-35. Nothing in the Code suggests it was not binding on Driven Brands and Gilbert.

With these provisions, Driven Brands "promised it would not retaliate against employees for [filing complaints], not merely foreseeing that its workers would rely upon it, but with the specific intent of encouraging use of this process." *See Vida*, 885 S.W.2d at 182. Gilbert filed a complaint about his

15

supervisor in reliance upon the non-retaliation provision in the Code. Dkt. 1-1 at 3. He used the procedure for reporting unethical conduct, but was discharged the next day. Dkt. 1-1 at 11-13. Gilbert has alleged enough to show that Section XVIII.4 is an enforceable promise. *See supra* Part I.A.

Despite Driven Brands's protestations, Section XVIII.4 is plain on its face—"No Retaliation for Submitting Complaints." Dkt. 1-1 at 34. Based on the allegations, Driven Brands foreseeably and intentionally induced Gilbert to change his position by reporting his supervisor's misconduct. And Gilbert did so to his detriment, as he allegedly was terminated for reporting that misconduct. This Court should deny Driven Brands's motion to dismiss the promissory estoppel claim.

## II. Gilbert has not adequately pleaded his fraud and fraudulent inducement claims.

Gilbert has also pleaded interrelated claims for fraud and fraudulent inducement. Dkt. 1-1 at 19-20. Driven Brands contends that these claims fail for lack of any actionable misrepresentation. Dkt. 5 at 9. In addition, Driven Brands asserts that Gilbert merely recites the elements without supporting facts or allegations. Dkt. 5 at 10; Dkt. 10 at 4. Driven Brands also claims that Gilbert's at-will status bars his fraud claims. Dkt. 5 at 10.

In response, Gilbert argues that he sufficiently alleged that Driven Brands promised in writing that he would not be terminated for reporting

16

unprofessional or unethical conduct. Dkt. 1-1 at 19-20; Dkt. 7 at 17-18. Gilbert argues he foreseeably relied on Driven Brands' promise, only to be terminated, "thereby resulting in lost wages and other injuries and damages." Dkt. 1-1 at 20. Gilbert lastly maintains that the Code modified his at-will employment status and may thus bring claims for fraud. Dkt. 7 at 18.

The Court need not resolve the impact of Gilbert's employment status on his fraud-based claims. Instead, both claims should be dismissed for failure to plead them with particularity.

### A. Gilbert pleaded insufficient facts to support his fraud claim.

A common-law fraud claim requires (1) a material misrepresentation; (2) that was false; (3) that the employer knew to be false when made or asserted without knowledge of its truth; (4) intended to be acted upon; (5) detrimentally relied upon; and (5) resulting in injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Averments of fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b). This means a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

Gilbert's pleading falls short of this standard. Nowhere does it allege why Driven Brands's promise to refrain from firing him for submitting a complaint was fraudulent. Intent not to perform a promise "may be inferred from a party's subsequent acts after the representation is made." *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). But "[e]vidence of post-representation nonconformity is alone no evidence of fraud." *See Figueroa v. West*, 902 S.W.2d 701, 707 (Tex. App.—El Paso 1995, no writ*)* (citing *Spoljaric*, 708 S.W.2d at 435). This means a fraud claim premised on a promise "to do an act in the future" requires showing that the defendant "had no intention of performing the act" when the promise was made. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992).

Gilbert's pleading is lacking on these requirements. It merely asserts, in conclusory fashion, that "Driven Brands made material misrepresentations to Gilbert" and "knew those representations were false when they made them." Dkt. 1-1 at 20. Nowhere does Gilbert indicate how Driven Brands "made representations with the intent to deceive … at the time the representation was made." *See Ehrhardt v. Elec. & Instrumentation Unlimited of La.*, 220 F. Supp. 2d 649, 660 (E.D. Tex. 2002) (citing *Formosa*, 960 S.W.2d at 48).

Indeed, the chronology of events undermines Gilbert's theory that the representation was false when made. Driven Brands issued its Code of Conduct in 2021. Dkt. 5 at 10. But the alleged retaliatory conduct did not

18

occur until years later, in March 2023. Dkt. 1-1 at 3. Gilbert's pleading does not bridge this gap by alleging any facts indicating that Driven Brands never intended to abide by its Code.[1] *See Figueroa*, 902 S.W.2d at 707 (affirming directed verdict; no evidence that employer did not intend to perform in accordance with employee handbook).

Gilbert has not asserted fraud with the requisite particularity. *See* Fed. R. Civ. P. 9(b); *see also, e.g.*, *Bustos v. Invierte En Tex., LLC*, 2023 WL 5487672, at *4-5 (S.D. Tex. Aug. 9, 2023) (dismissing fraud claim for failure to "explain why the statement was fraudulent when made"), *adopted by* 2023 WL 5489048 (S.D. Tex. Aug. 24, 2023). Accordingly, this claim should be dismissed.

### B. Gilbert's claim for fraudulent inducement is similarly deficient.

Driven Brands asserts, and the Court agrees, that the same deficiency warrants dismissal of Gilbert's claim for fraudulent inducement. *See* Dkt. 5 at 9-10; Dkt. 10 at 4-5. "[F]raudulent inducement is a species of common law fraud that shares the same basic elements" as general common law fraud. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). This includes the requirement to show a representation that was false when made. *See Nat'l Prop. Holdings, L.P. .v Westergren*, 453 S.W.3d 419, 423 (Tex. 2015). Yet

---

[1] Although not raised in his response, Gilbert's pleading mentions a training video and discussions with his supervisor's manager, Elliott. Dkt. 1-1 at 6, 7-9. But it alleges no facts suggesting that any of those representations were false when made.

19

Gilbert has not alleged any facts supporting this requirement. *See supra* Part II.A. Because of this shortcoming, Gilbert's fraudulent inducement claim should also be dismissed.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Driven Brands Shared Services, LLC's motion to dismiss (Dkt. 5) be **GRANTED IN PART** with respect to Gilbert's claims for common-law fraud and fraudulent inducement and **DENIED IN PART** with respect to Gilbert's claims for breach of contract and promissory estoppel.

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on December 11, 2023, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge